UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **PERCY LEE OSBORNE** | * | **CIVIL ACTION NO.  11-0064** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Percy L. Osborne protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on April 20, 2009. *See* Tr. 8, 64-66, 71-76.  He alleged disability as of October 1, 2006, because of "back problems." (Tr. 82).  The claim was denied at the initial stage of the administrative process.  (Tr. 30-40).  Thereafter, Osborne requested and received a September 3, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 20-28).  However, in a February 26, 2010, written decision, the ALJ determined that Osborne was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy.  (Tr. 5-16).  Osborne appealed the adverse

decision to the Appeals Council. On December 2, 2010, however, the Appeals Council denied Osborne's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On January 21, 2011, Osborne sought review before this court. He alleges the following errors:

(1) the ALJ's residual functional capacity assessment is not supported by substantial evidence;

(2) the ALJ's determination at step five of the sequential evaluation process is not supported by substantial evidence; and

(3) the ALJ did not ensure that plaintiff knowingly and intelligently waived his right to counsel, thereby depriving plaintiff of a full and fair hearing, with resulting prejudice.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)   An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

3

>    (4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>    (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Osborne had not engaged in substantial gainful activity during the relevant period. (Tr. 11). At step two, he found that he suffers severe impairments of chronic lumbar spine pain and painful shoulders. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 11-12).

### II. Residual Functional Capacity

The ALJ next determined that Osborne retained the residual functional capacity to

perform the full range of medium work. (Tr. 12).[1] In his residual functional capacity assessment, the ALJ assigned "significant" weight to the findings of the consultative physician, David Hebert, M.D., and the non-examining agency physician, Gerald Dzurik, M.D. (Tr. 13-15). In fact, the findings of Drs. Hebert and Dzurik comprised the entire medical record before the ALJ. The ALJ also took pains to explain his decision not to fully credit plaintiff's self-described limitations. *Id*.

Plaintiff contends that the ALJ improperly grounded his residual functional capacity

---

[1] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

assessment on the reports of Drs. Hebert and Dzurik because 1) Dr. Hebert's report is too vague, and 2) Dr. Dzurik tailored his assessment to support a "not disabled" finding at the agency level.

Regarding Dr. Hebert, the court notes that he examined Osborne on May 21, 2009, at the request of disability determination services. (Tr. 111-114). At the examination, Osborne reported chronic back problems since 1979. *Id*. Nonetheless, he was able to flex the lumbar spine from 0 to 80 degrees and extend it from 0 to 20 degrees. *Id*. Lateral flexion on the left and right was 0 to 20 degrees. *Id*. Osborne complained of pain on motion of the lumbar spine, but was able to do it fairly satisfactorily. *Id*. His gait and station were fairly normal. *Id*. He also exhibited no difficulty with routine ambulation or walking on his heels or tip toes. *Id*. Deep tendon reflexes were +2 bilaterally, with no motor sensory deficits; there also were no pathological reflexes; motor strength in all areas was 5/5; hand grip was 5/5 bilaterally; hand dexterity and hand grasping were good; and the sensory and motor systems remained intact. *Id*. Furthermore, x-rays of the lumbar spine showed normal anatomy, with the spine well maintained. *Id*. The x-rays also revealed minimal spur formation on two or three of the lumbar vertebrae, but otherwise, were completely normal. *Id*.

Hebert diagnosed chronic lumbar spine pain of uncertain etiology, with no significant impairment of function of the lumbar spine. *Id*. He surmised that Osborne's condition could represent mild, early osteoarthritis. *Id*. Hebert further diagnosed painful shoulders of uncertain etiology, but noted that they remained very functional. *Id*. He concluded his report by opining that "medically, [he saw] no reason why this individual could not do routine walking, sitting, standing, carrying, and lifting for an 8 hour day. Mentally he [was] alert and still quite functional." *Id*.

Plaintiff argues that Dr. Hebert's concluding assessment is too vague to support a residual

functional capacity for medium work.  Indeed, in other cases, this court has struggled to discern what Dr. Hebert means by his trademark concluding phrase.  *See e.g., Tolliver v. Astrue*, Civil Action Number 11-0039 (W.D. La. Jan. 23, 2012).  In this case, however, the record includes an opinion by a non-examining agency physician, Dr. Dzurik, who reviewed the file and Dr. Hebert's report, before ultimately opining that plaintiff retained the residual functional capacity ("RFC") for medium work. (Tr. 115-126).

Plaintiff argues that Dr. Dzurik's opinion should be discounted because Dzurik originally signed off on an RFC for light work.  (Tr. 115-116).  Plaintiff emphasizes that Dzurik changed his mind and adopted an RFC for medium work only after the disability examiner advised him that an RFC for light work would result in a finding that the claimant was disabled.  *See* Tr. 117-118.

Were this the total sum of it, plaintiff's argument would be well-taken.  However, plaintiff's recitation of the facts glosses over a key detail, which is that although Dr. Dzurik initially agreed with the RFC for light work, as proposed by the disability examiner, he included the qualifier that an RFC for light work was "probably generous."  (Tr. 116).  In other words, Dzurik initially believed that the record probably supported an RFC for more than light work. Nonetheless, he went along with the RFC for light work proposed by the disability examiner because it did not appear to affect the outcome.  When the disability examiner later determined that a light RFC would compel a finding of "disabled," and instead proposed to Dzurik an RFC for medium work, Dzurik did not express any reservations about acceding to the more functional RFC, because, by all indications, that was his initial inclination anyway.

The court further emphasizes that although plaintiff alleged disability as of October 2006, he did not actually file for disability until some two and one-half years later in April 2009.

Moreover, when he finally *did* file, he acknowledged that he had not been seen by a doctor, hospital, or anyone else for his alleged disabling impairments. (Tr. 84). At the hearing, plaintiff attributed his lack of medical treatment to his inability to afford the care. (Tr. 23). Nonetheless, he eventually succeeded in making his way to the local charity hospital ("LSU") for an "initial visit" for his back pain, but not until February 3, 2010, – over three years after his impairments purportedly rendered him unable to work and approximately 23 days before the ALJ's decision. *See* Pl. Brief, Exh. B., pg. 11 [doc. # 13-2], and discussion, *infra*.

      Plaintiff also contends that the ALJ's RFC assessment is undermined by new evidence that he presented to the Appeals Council. In the Fifth Circuit, evidence that is submitted to the Appeals Council in the first instance constitutes part of the record before the district court and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision. *Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[2]

      The "new" evidence at issue here constitutes medical records that extend from February 3 through July 26, 2010. *See* Pl. Brief, Exh. B, pgs. 1-25 (hereinafter referred to as "Exh. B," plus the appropriate page number). However, only the February 3, 2010, visit to the orthopedic clinic (and associated x-rays) are dated prior to the ALJ's decision. Moreover, as stated earlier, the February 3, 2010, orthopedic appointment was plaintiff's initial visit for his back pain. (Exh. B., pg. 11). Yet, according to the treatment note, he was not in any pain. *Id*. Contemporaneous x-

---

    [2] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

rays of the lumber spine suggested osteoarthritis and degenerative disc narrowing at L5-S1. *Id*. Straight leg raise test was negative bilaterally, but caused pain in the back. *Id*. The clinic prescribed medication, and directed Osborne to return, as needed. *Id*.

These additional medical records further document that Osborne went to medical appointments on March 11, March 29, April 8, July 8, July 12, and July 26, 2010. Exh. B, pgs. 2-10. The records reflect, *inter alia*, treatment for hypertension and a work-up for hematochezia. At the time of the March and April appointments, however, the nurse indicated that Osborne was not in any pain. *Id*. Furthermore, when Osborne went to the clinic on July 8, 2010, he complained of "back pain soreness through [the] rib cage," after digging holes and a trench in his aunt's flower bed. *Id*., at pg. 6. Osborne reported that his back pain started four days earlier. *Id*. Although the clinic offered Osborne medication, he declined because he believed that the pain would subside on it own, with rest. *Id*. Apparently, the pain did not resolve promptly, because he indicated that he was still in pain on July 26, 2010, when he returned to the clinic to obtain the results of his colonoscopy. *Id*.

The court is not persuaded that the foregoing medical records undermine the ALJ's RFC assessment. First, only one of the clinic visits occurred prior to the ALJ's decision, and all of them are dated well after the September 2009 hearing before the ALJ.[3] Thus, the evidence likely reflects a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks

---

[3] Fifth Circuit case law suggests that the relevant period for a disability claim extends only until the date of the administrative hearing. *Hammond v. Barnhart*, 132 Fed. Appx. 6 (5th Cir. May 17, 2005) (unpubl.); *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

omitted)). Nonetheless, even if the new evidence regarding plaintiff's back impairment could be interpreted as pertinent to the time period at issue, plaintiff has not demonstrated that the evidence is material, *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989).[4] Indeed, until his July 8, 2010, clinic appointment, the medical records reflect that Osborne was not in any pain. Furthermore, he apparently did not aggravate his back impairment until he attempted to dig a trench. The fact that plaintiff even would attempt something as strenuous and demanding as digging a trench undercuts his allegations that he was incapable of performing such work. In addition, it apparently had been his experience that these exacerbations were short-lived and tolerable, because he declined medication or treatment.

Accordingly, the court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

## III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Osborne could not perform his past relevant work. (Tr. 15). Accordingly, he proceeded to step five. At this step, the ALJ determined that, during the relevant period, plaintiff's age category progressed from an individual "closely approaching advanced age" to an individual of "advanced age," that he had a limited education, and that transferability of skills was immaterial. (Tr. 15-16). The ALJ observed that given Osborne's vocational factors, and with an RFC for the full range of medium work, the Medical-Vocational Guidelines directed a finding of not disabled. 20 C.F.R. §

---

[4] The February 3, 2010, initial visit to the orthopedic clinic only affirmed Dr. Hebert's suspicion that Osborne suffered from osteoarthritis. Also, there is no indication that the x-ray of the lumbar spine was materially different from the x-rays taken at the time of Dr. Hebert's consultations. Thus, the evidence is merely cumulative.

404.1569; Rules 203.19 and 203.12, Table 1, Appendix 2, Subpart P, Regulations No. 4.  (Tr. 15-16).

Plaintiff contends that the ALJ's step five determination is flawed because he should have obtained vocational expert testimony to address the effects of plaintiff's significant non-exertional impairments.  However, "[w]hen the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, . . . and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).

Plaintiff's argument at step five essentially resumes his attack on the sufficiency of the ALJ's RFC assessment.  However, having decided that the ALJ's RFC is supported by substantial evidence, the court necessarily concludes that plaintiff's step five argument lacks merit.

**IV.    Waiver of Right to Counsel**

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003).  Furthermore, a claimant is entitled to receive adequate notice of his right to counsel at an administrative  hearing.  *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).  "Adequate notice" requires that an ALJ apprise the claimant: "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D.

Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)). "Adequate notice" may be established by several written notices, plus oral confirmation by the ALJ that plaintiff wishes to represent himself. *See Castillo, supra*.

Here, plaintiff received numerous written notices advising him of his right to representation. *See* Tr. 33-52. Moreover, two days before the September 3, 2009, hearing, Osborne signed a waiver of representation wherein he stated that he understood his right to representation at the hearing, that he voluntarily waived that right, that he asked to proceed without a representative, and that he had received a list of organizations that provide legal services prior to the hearing. (Tr. 63).

At the hearing itself, the ALJ stated in his opening remarks that plaintiff "appears *pro se* and has agreed to do so." (Tr. 22). This is the only mention of plaintiff's right to counsel anywhere in the transcript. There is no indication whether the ALJ spoke with plaintiff concerning his right to counsel prior to going on the record. While on the record, the ALJ did not ask plaintiff whether he had received the notices in the mail concerning his right to representation. The ALJ also did not ask plaintiff whether he understood the information contained in those notices regarding representation. *See* HALLEX I-2-6-52, 1993 WL 643033.

In another similarly postured case, this court was unable to conclude that the claimant had validly waived his right to an attorney at the hearing. *See Morris v. Astrue*, Civil Action No. 09-1833 (W.D. La. Oct. 29, 2010, R&R). However, that does not end the inquiry. When a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted). The ALJ's failure to develop an adequate record does not automatically compel reversal. *Id*.

Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that []he was prejudiced as a result of [sic] scanty hearing. [H]e must show that, had the ALJ done his duty, []he could and would have adduced evidence that might have altered the result." *Kane supra* (internal

Osborne, who has been represented by counsel since the month after the ALJ's decision, contends that had he retained counsel earlier, his attorney could have obtained the medical records that he eventually submitted to the Appeals Council. However, this court previously concluded that these records either were not new, material, or relevant to the period at issue. *See* discussion, *supra*.

Plaintiff's counsel further argues that he could have cross-examined Dr. Hebert regarding his vague findings, urged the ALJ to obtain a more specific medical source statement from Hebert, or asked the ALJ to refer plaintiff for another consultative examination. Plaintiff's argument is nothing more than speculation. It is not counsel's practice to always cross-examine Dr. Hebert whenever he issues his ambiguous, concluding phrase. *See e.g., Tolliver, supra*. Moreover, there is no apparent reason why, after plaintiff retained counsel in March 2010, counsel could not have directed his client to return to his recently consulted orthopedist at LSU and asked the physician to complete an attorney-supplied medical source statement, akin to counsel's practice in other cases. *See e.g., Muse v. Astrue*, Civil Action No. 10-1809 (W.D. La. Dec. 21, 2009, R&R).[5] Something more is required than a speculative assertion that other tests or testimony might have made a difference. *See Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.)

---

[5] The medical source statement could have included questions asking the physician to consider the effects of plaintiff's impairments retroactively to the relevant period at issue.

Finally, plaintiff argues that had plaintiff been represented, counsel could have extended the nine minute hearing by asking plaintiff additional questions and asking questions of the vocational expert. The brevity of a hearing, however, does not alone establish that the ALJ breached his duty to develop the record. *See James v. Bowen*, 793 F.2d 702 (5th Cir. 1986) (ten minute hearing not inadequate). Here, the ALJ elicited testimony from plaintiff and plaintiff's aunt and uncle regarding plaintiff's impairments and their effects upon his functional capacity. *See* Tr. 23-28.[6] Morever, testimony from the vocational expert would not have been relevant to the decision because the ALJ neither relied upon, nor needed to rely upon, vocational expert testimony in his decision. *See* discussion, *supra*.

In sum, plaintiff has not demonstrated that he was prejudiced by his decision to proceed without counsel at the hearing, or relatedly, as a result of the ALJ's alleged failure to fully and fairly develop the record.

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[6] Plaintiff emphasizes that counsel would have pointed out that an RFC for light work would have allowed the claim, and thus, plaintiff did not have to display debilitating symptoms. However, the record before the ALJ unambiguously highlighted that an RFC for light work would compel a finding that plaintiff was disabled. *See* Tr. 117.

objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 26th day of January 2012.

*[signature]*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE